UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| LEO HUNTER, | Case No. 3:18-cv-00166-HDM-CLB |
| Petitioner, | **ORDER** |
| v. | |
| ISIDRO BACA, et al., | |
| Respondents. | |

Petitioner Leo Hunter, a Nevada prisoner, has filed a counseled amended petition for a writ of habeas corpus under 28 U.S.C. § 2254. (ECF No. 40.) Currently before the Court is Respondents' motion to dismiss Hunter's amended petition. (ECF No. 58.) In their motion to dismiss, Respondents argue that the amended petition is untimely, grounds 1(a) and 1(b) are procedurally defaulted, and Hunter failed to develop the factual basis for the claims in ground 1. (*Id*.) Hunter opposed the motion, and Respondents replied. (ECF Nos. 60, 63.) For the reasons discussed below, the Court grants the motion, in part, and denies the motion, in part.

I. **FACTUAL AND PROCEDURAL HISTORY**

In its order affirming Hunter's judgment of conviction, the Nevada Supreme Court described the crime, as revealed by the evidence at Hunter's trial, as follows:

> Hunter and the victim, his daughter Lenora, argued often and especially about the amount of time she spent caring for her young children. Hunter, his wife Stella (Lenora's mother), and Lenora and her two daughters, lived together in Hunter's home. On the night of the incident, after another argument, Lenora informed Stella that she was moving out and taking the children with her. Stella informed Hunter, who then retrieved a .44 Magnum handgun from the closet, intending, he claimed, to scare her. Hunter also told detectives the next day, however, that he "wasn't thinking" at the time, he "was just angry," and "[t]hat was the last straw for me because every time she takes her children out of the house, they come back in worse state than they were before." Stella tried to stop Hunter, but he pushed her aside and knocked her to the ground in order to confront Lenora. Stella told detectives that she heard him say, "I'm willing to do the time." Stella testified that she did not

  believe the gun was loaded, but Hunter told detectives that the .44 Magnum was the only one of his many weapons that he kept loaded, due to problems with coyotes. Hunter did not recall pulling the trigger, only that "[w]e pushed each other and the gun went off."

(ECF No. 18-3 at 2–3.) A jury found Hunter guilty of second-degree murder of Lenora Warren with the use of a deadly weapon. (ECF No. 17-21.) Hunter was sentenced to 10 to 25 years in prison plus a consecutive term of 57 to 147 months for the deadly weapon enhancement. (*Id.*) Hunter appealed, and the Nevada Supreme Court affirmed on April 11, 2012. (ECF No. 18-3.) Remittitur issued on May 8, 2012. (ECF No. 18-5.) Hunter petitioned for state postconviction relief on August 30, 2012. (ECF No. 18-7.) After an evidentiary hearing, the state court denied Hunter postconviction relief on January 3, 2017. (ECF No. 19-7.) Hunter appealed, and the Nevada Court of Appeals affirmed on February 14, 2018. (ECF No. 19-22.) Remittitur issued on March 13, 2018. (ECF No. 19-23.)

  Hunter filed his *pro se* federal habeas petition on April 19, 2018. (ECF No. 1-1.) Respondents moved to dismiss Hunter's *pro se* petition, and this Court granted the request, in part. (ECF No. 14, 22.) Hunter moved for a stay, and this Court granted the motion, administratively closing this action on December 9, 2019. (ECF No. 25.) On May 11, 2020, this Court reopened this action and appointed counsel for Hunter. (ECF No. 30.) On November 9, 2020, this Court stayed this action at Hunter's request until he was ready to file his counseled amended petition. (ECF No. 35.) Hunter moved to reopen this action and filed his counseled amended petition on November 19, 2021. (ECF Nos. 39, 40.) Respondents moved to dismiss the amended petition, and Hunter again moved to stay this action. (ECF Nos. 49, 52.) This Court granted the stay. (ECF No. 54.) On July 20, 2023, this Court reopened this action. (ECF No. 57.) Respondents filed the instant motion to dismiss, Hunter responded, and Respondents replied. (ECF Nos. 58, 60, 63.)

In his amended petition, Hunter raises the following grounds for relief:

    1(a).   His trial counsel failed to use Lenora's toxicology reports to argue her drug use caused erratic, violent, even suicidal behavior.
    1(b).   His trial counsel failed to elicit exculpatory testimony of Dustin Grate to present prior inconsistent statements from Stella Hunter.
    1(c).   His trial counsel failed to impeach Mrs. Hunter with her preliminary hearing testimony on whether the gun was loaded prior to retrieval.
    1(d).   His trial counsel failed to adequately investigate and prepare for sentencing.
    2.   The trial court erred in rejecting his proposed jury instructions.

(ECF No. 40.)

## II. LEGAL STANDARDS

### A. Timeliness and relation back

A new claim in an amended petition that is filed after the expiration of the Antiterrorism and Effective Death Penalty Act ("AEDPA") one-year limitation period will be timely only if the new claim relates back to a claim in a timely-filed pleading on the basis that the claim arises out of "the same conduct, transaction or occurrence" as a claim in the timely pleading. *Mayle v. Felix*, 545 U.S. 644 (2005). In *Mayle*, the United States Supreme Court held that habeas claims in an amended petition do not arise out of "the same conduct, transaction or occurrence" as claims in the original petition merely because the claims all challenge the same trial, conviction, or sentence. *Id.* at 655–64. Rather, habeas claims asserted in an amended petition relate back "only when the claims added by amendment arise from the same core facts as the timely filed claims, and not when the new claims depend upon events separate in 'both time and type' from the originally raised episodes." *Id.* at 657. In this regard, the reviewing court looks to "the existence of a common 'core of operative facts' uniting the original and newly asserted claims." *Id.* at 659.

### B. Procedural default

Federal courts are barred from considering a state prisoner's habeas claim if the state courts denied his claim pursuant to an independent and adequate state procedural rule. *Edwards v. Carpenter*, 529 U.S. 446, 454–55 (2000). "The Ninth Circuit has elaborated that a state rule must be clear, consistently applied, and well-established at the time of the petitioner's purported default." *Collier v. Bayer*, 408 F.3d 1279, 1284 (9th Cir. 2005) (internal quotation marks omitted). "If a state procedural rule is not well-established before a petitioner supposedly breaks the rule, then the rule cannot prevent federal review of the petitioner's federal claims." *Id*.

When a prisoner "procedurally defaults" a federal claim, judicial review is barred unless he can show either: (1) "cause for the default and actual prejudice as a result of the alleged violation of federal law," or (2) "that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). To demonstrate cause, a petitioner must show that some external and objective factor impeded his efforts to comply with the state's procedural rule. *Maples v. Thomas*, 565 U.S. 266, 280–81 (2012). Ignorance or inadvertence does not constitute cause. *Murray v. Carrier*, 477 U.S. 478, 486–87 (1986). To show prejudice, a petitioner bears the burden of showing not merely that the error created a possibility of prejudice, but that the error worked to his actual and substantial disadvantage, infecting the entire proceeding with constitutional error. *Id*. at 494; *Bradford v. Davis*, 923 F.3d 599, 613 (9th Cir. 2019).

In *Martinez v. Ryan*, the Supreme Court created a narrow exception to the general rule that errors of post-conviction counsel cannot provide cause for a procedural default. 566 U.S. 1, 16–17 (2012). Under *Martinez*, "[w]here, under state law, claims of ineffective assistance of trial counsel must be raised in an initial-review collateral proceeding, a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective."

4

*Id.* at 17. *Martinez* cannot excuse the procedural default of a substantive claim of trial-court error, appellate-level ineffective assistance claims, or "attorney errors in other kinds of proceedings, including appeals from initial-review collateral proceedings, second or successive collateral proceedings, and petitions for discretionary review in a State's appellate courts." *Id.* at 16.

### III. DISCUSSION

In their motion to dismiss, Respondents argue that the amended petition is untimely, grounds 1(a) and 1(b) are procedurally defaulted, and Hunter failed to develop the factual basis for the claims in ground 1. (ECF No. 58.) This Court will discuss each of these arguments in turn.

#### A. Timeliness and relation back

Respondents argue that Hunter's counseled amended petition is untimely and the claims that do not relate back to his timely original *pro se* petition must be dismissed. (ECF No. 58 at 3.) Hunter concedes that his counseled amended petition is not timely and that ground 2 does not relate back to his *pro se* federal petition. (ECF No. 60 at 2.) However, Hunter contends that ground 1(d) was raised in his *pro se* petition, so it relates back and is timely. (*Id.*) This Court dismisses ground 2 and discusses ground 1(d).

In ground 1(d) of his counseled federal petition, Hunter argues that his trial counsel failed to adequately investigate and prepare for sentencing. (ECF No. 40 at 14.) In his *pro se* federal petition, Hunter asserted that his trial counsel was ineffective for failing to adequately prepare and investigate, and he attached a copy of his counseled state postconviction petition as an exhibit. (ECF No. 1-1 at 3–6, 46–62). In that attached counseled state petition, Hunter asserted that his trial counsel was ineffective at sentencing. (*Id.* at 48, 53–57.) In his *pro se* federal petition, Hunter also attached a copy of the Nevada Court of Appeals' Order of Affirmance wherein the Nevada Court of Appeals addressed the claim of ineffective assistance of trial counsel at sentencing. (*Id.* at 79.)

"If a petitioner attempts to set out habeas claims by identifying specific grounds for relief in an original petition and attaching a court decision that provides greater detail about the facts supporting those claims, that petition can support an amended petition's relation back." *Ross v. Williams*, 950 F.3d 1160, 1167 (9th Cir. 2020) (explaining that "the original petition consists of the petition itself and any written instruments that are exhibits to the petition" for purposes of relation back) (internal quotation marks omitted)). Because (1) Hunter attached both his counseled state postconviction petition and the Nevada Cout of Appeals' Order to his timely *pro se* federal petition and (2) his counseled state postconviction petition and the Nevada Cout of Appeals' Order both discuss the claim asserted in ground 1(d) of Hunter's counseled federal petition, ground 1(d) relates back and is timely.

### B.   Procedural default of grounds 1(a) and 1(b)

In grounds 1(a) and 1(b), Hunter makes the following respective arguments: (1) his trial counsel failed to use Lenora's toxicology report to argue her drug use caused erratic, violent, and suicidal behavior and (2) his trial counsel failed to elicit exculpatory testimony of Dustin Grate to present prior inconsistent statements from Stella Hunter. (ECF No. 40 at 7, 10.) Respondents argue that grounds 1(a) and 1(b) are procedurally defaulted. (ECF No. 58 at 5.) Hunter concedes that grounds 1(a) and 1(b) are procedurally defaulted, but he contends that he can overcome the procedural defaults because Nevada applied arbitrary state rules in finding that these claims were procedurally barred. (ECF No. 60 at 6.) Alternatively, Hunter contends that he can overcome the procedural defaults under *Martinez*. (*Id*. at 9–10.) To support these arguments, Hunter explains the following: (1) he raised grounds 1(a) and 1(b) in his first *pro se* state habeas petition, (2) his state postconviction counsel neglected to raise these claims in his counseled supplemental petition, (3) the state court did not decide these claims, (4) his state postconviction appellate counsel failed to

raise these claims in his postconviction appeal, requiring him to raise them in a later state postconviction petition, and (5) he could not personally address the state court's failure to consider his claims during his first state postconviction proceedings because he was represented by counsel. (ECF No. 60 at 7–8.)

In affirming the denial of Hunter's successive state postconviction petition, the Nevada Court of Appeals held as follows:

> Hunter filed his petition more than ten years after issuance of the remittitur on direct appeal on May 8, 2012. Thus, Hunter's petition was untimely filed. *See* NRS 34.726(1). Moreover, Hunter previously filed a postconviction habeas petition that was decided on the merits. Hunter's petition was successive to the extent it alleged grounds for relief that had previously been decided on the merits, and it constituted an abuse of the writ to the extent it raised new and different grounds for relief. *See* NRS 34.810(1)(b)(2); NRS 34.810(2). Therefore, Hunter's petition was procedurally barred absent a demonstration of good cause and actual prejudice. *See* NRS 34.726(1); NRS 34.810(1)(b); NRS 34.810(3).

(ECF No. 59-25 at 2–3.)

Hunter asserts that the Nevada Court of Appeals' decision in this regard was unreasonable because he was unable to address the state court's failure to consider his claims during his initial state habeas proceedings because he was represented by counsel and any attempt that he could have personally made to get them included in his appeal would have been struck as a rogue document. Even if Hunter was not able to personally include the instant claims within his initial state postconviction appeal due to the presence of his counsel, he fails to show (1) that the Nevada Court of Appeals denied his claims in his later state postconviction appeal pursuant to an inadequate state procedural rule or (2) cause to excuse the default. Indeed, Nevada's state procedural rules employed here—NRS 34.726(1) and NRS 34.810(1)(b)(2), (2)—have been found to be independent and adequate. *See, e.g., Williams v. Filson*, 908 F.3d 546, 580 (9th Cir. 2018); *Bargas v. Burns*, 179 F.3d 1207, 1211–14 (9th Cir. 1999); *Vang v. Nevada*, 329 F.3d 1069, 1073–

74 (9th Cir. 2003); *Moran v. McDaniel*, 80 F.3d 1261, 1269–70 (9th Cir. 1996). And to demonstrate cause for a procedural default, Hunter must show something external to him impeded his ability to comply with Nevada's procedural rule. *Maples*, 565 U.S. at 280. Hunter alleges he can meet this demonstration because Nevada law lacks adequate procedural remedies for his situation. (ECF No. 60 at 7.) This Court disagrees. The impediment here was due to his initial state postconviction appellate counsel's decision not to raise these claims in Hunter's initial postconviction appeal. This is not external to Hunter. *See Maples*, 565 U.S. at 280–281 (explaining that "because the attorney is the prisoner's agent, . . . the principal bears the risk of negligent conduct on the part of his agent"). And any negligence or inadvertence on the part of Hunter's initial state postconviction appellate counsel does not qualify as cause. *Id*. at 280.

Moreover, *Martinez* is not available to excuse the procedural default of grounds 1(a) and 1(b). In his initial counseled state supplemental petition, Hunter's postconviction counsel explained the following: "This is a Supplemental Petition. Petitioner intends to litigate all issues, *including* those found in [Hunter's *pro se*] Petition on file [dated] September 7, 2012." (ECF No. 18-16 at 6 (emphasis added).) And in its order denying Hunter postconviction relief, the state court explained that "[b]efore this Court is Petitioner Leo Hunter Jr.'s Petition for Writ of Habeas Corpus (Post-Conviction) filed on September 7, 2012" and Hunter's "Supplemental Petition for Writ of Habeas Corpus (Post-Conviction) on June 27, 2013." (ECF No. 19-7.) Thus, contrary to Hunter's assertions, the instant claims from Hunter's initial *pro se* state habeas petition were included within his counseled supplemental petition and were considered by the state court. As was discussed previously, any error that occurred here was by Hunter's initial state postconviction appellate counsel who decided not to raise these claims on appeal. However, *Martinez* does not apply to postconviction appellate counsel's errors. *Martinez*, 566 U.S. at 16 ("The holding in this case does

not concern attorney errors in other kinds of proceedings, including appeals from initial-review collateral proceedings.").

Grounds 1(a) and 1(b) are dismissed as procedurally defaulted.

### C. Factual basis for ground 1

Respondents argue that Hunter failed to develop the factual basis for the claims in ground 1. (ECF No. 58 at 6.) To remedy the situation, Respondents request that (1) the claims in ground 1 be dismissed to the extent they rely on new evidence or (2) the new evidence be stricken. (*Id.*) Hunter rebuts that only exhibit 5 contains new evidence, but he can bypass the evidentiary restrictions for this Court to consider exhibit 5 because he made a reasonable attempt to present this new evidence to the state court. (ECF No. 60 at 15–16.) The Court defers ruling on this argument until the merits stage of these proceedings because the Court will be in a better position to consider whether the evidence is new or not when it is conducting its merits review.

## IV. CONCLUSION

IT IS THEREFORE ORDERED that Respondents' motion to dismiss **[ECF No. 58] is granted, in part,** as follows: (1) ground 2 is dismissed as untimely and (2) grounds 1(a) and 1(b) are dismissed as procedurally defaulted.

IT IS FURTHER ORDERED that, pursuant to this Court's scheduling order (ECF No. 30), Respondents have 60 days from the date of this order in which to file an answer to the remaining grounds—1(c) and 1(d)—in the amended petition. Hunter will then have 30 days following the filing of an answer to file a reply.

Dated: January 5, 2024

_____
HOWARD D. MCKIBBEN
UNITED STATES DISTRICT JUDGE